UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § § § § **Plaintiff,** § § v. § § **LEXINGTON CAPITAL HOLDINGS LLC** § an Unknown Business Entity, and **FRANCIS** § **DIANTONIO, NICOLETTE DIANTONIO**, and § **FRANCIS LEWANDO** § § **Defendants.** § § | EP-23-cv-00391-KC |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant LEXINGTON CAPITAL HOLDINGS LLC ("Lexington") is an unknown business entity operating at 585 North Bicycle Path, Ste 14, Port Jefferson Station, Brookhaven, New York 11776 and can be served via chief executive officer Francis ("Frankie") DiAntonio, 2 Wedge Court, Seldon, New York 11784.

3. Defendant FRANCIS DIANTONIO, also known as FRANKIE DIANTONIO ("Mr. DiAntonio") is a natural person, resident of New York, founder and Chief Executive Officer of Defendant Lexington, and can be served at 2 Wedge Court, Seldon, New York 11784.

4. Defendant NICOLETTE DIANTONIO ("Ms. DiAntonio") is a natural person, resident of

1

New York, in charge of ISO operations, personally participated in the calls alleged herein and can be served at 2 Wedge Court, Seldon, New York 11784.

5.      Defendant FRANCIS LEWANDO ("Lewando") is a natural person, resident of New York, chief operating officer of Defendant Lexington, personally participated in the calls alleged herein and can be served at 180 N Coleman Road, Centereach, New York 11720.

## JURISDICTION AND VENUE

6.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7.      This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to the State of Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.

   a. Defendants target Texas when marketing merchant cash advances and business loans and regularly conduct business in this District, including telephone solicitation.

   b. Its agents purposefully sent phone calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant Lexington.

   c. Defendant Lexington purposefully spoofed Texas area code phone numbers in order to trick Texas residents into thinking the calls were local.

   d. Defendant Lexington purposefully portrayed itself as being a Texas-based company.

   e. Defendant Lexington continued to purposefully direct phone calls into Texas after receiving a Do Not Call (DNC) request and being alerted that unwanted phone

calls were being sent into Texas.

    f. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando directed the phone calls to be sent into Texas and purposefully directed that Texas residents be targeted with the solicitation phone calls.

    g. The purposeful phone calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

8. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single phone call from Defendant Lexington which is the subject matter of this lawsuit.

9. This Court has venue over Defendants because the phone calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

24. Defendant Lexington offers merchant cash advances and other business funding options.

25. Defendants called Plaintiff at least thirty-six (36) times soliciting Plaintiff for high interest loans.

26. Defendant used a series of auto-dialed spoofed phone numbers to place the phone calls to Plaintiff and trick Plaintiff into thinking the phone calls were of local origin.

27. On May 26, 2023, Plaintiff was called from the phone number 915-277-3951 by Lexington employee Matt Garcia ("Garcia"). Garcia called Plaintiff at least 10 times from this phone number.

28. The phone calls from phone number 915-277-3951 were harassing and annoying so Plaintiff began to intentionally not answer the phone calls from this phone number.

29. Garcia knew Plaintiff was ignoring his phone calls and began to call Plaintiff from phone number 915-280-2378.

30. On June 22, 2023, at 8:43 AM Martin called Plaintiff again from phone number 915-277-3951. Plaintiff answered the phone and told Martin, "I'm tired of you calling from spoofed

telephone numbers. If you're in New York, why are you calling me with 915 area codes? Don't ever call me again." Plaintiff then hung up the phone.

31. Martin immediately called Plaintiff back from his real phone number 631-561-5163. Martin apologized for the spoofed numbers and then informed Plaintiff that they (Defendant Lexington) use auto dialing equipment that intentionally spoofs phone numbers in order to make consumers believe the calls were local and increase the likelihood the phone calls are answered.

32. Intentionally spoofing caller identification is a Deceptive Trade Practice under Texas Law.

33. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando purchased the auto-dialing telephone spoofing equipment, trained the employees on how to operate the equipment, and instructed their employees to use the equipment to market their products.

34. Martin continued to call Plaintiff after being told to not call Plaintiff again.

35. Martin placed repeated calls to Plaintiff before 8 AM despite being informed by Plaintiff multiple times that Plaintiff was in the Mountain time zone.

36. Defendant Martin called Plaintiff with other spoofed phone numbers that will be revealed during discovery.

37. Table A shows the phone calls sent to Plaintiff by Defendants.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 05/25/2023 | 3:16 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 2. | 05/26/2023 | 8:39 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 3. | 05/26/2023 | 1:51 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 4. | 05/31/2023 | 9:20 AM | 915-280-2378 | Martin calling with an intentionally spoofed number |

| | | | | |
|---|---|---|---|---|
| 5. | 05/31/2023 | 12:53 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 6. | 06/01/2023 | 8:19 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 7. | 06/01/2023 | 11:01 AM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 8. | 06/01/2023 | 4:08 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 9. | 06/02/2023 | 9:20 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 10. | 06/07/2023 | 7:31 AM | 915-320-5752 | I informed Martin I was on Mountain time and hung up. |
| 11. | 06/07/2023 | 2:49 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 12. | 06/08/2023 | 4:40 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 13. | 06/09/2023 | 1:13 PM | 631-920-1851 | Missed call ignored |
| 14. | 06/10/2023 | 7:34 AM | 682-300-9081 | I informed Martin I was on Mountain time and hung up. |
| 15. | 06/10/2023 | 7:58 AM | 915-245-2600 | I informed Martin I was on Mountain time and hung up. |
| 16. | 06/12/2023 | 11:40 AM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 17. | 06/12/2023 | 1:28 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 18. | 06/13/2023 | 7:57 AM | 915-263-8922 | I informed Martin I was on Mountain time and hung up. |
| 19. | 06/13/2023 | 4:09 PM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 20. | 06/14/2023 | 1:06 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 21. | 06/15/2023 | 8:24 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 22. | 06/15/2023 | 11:00 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 23. | 06/15/2023 | 1:25 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 24. | 06/16/2023 | 10:21 AM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| 25. | 06/16/2023 | 12:43 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 26. | 06/19/2023 | 8:20 AM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| 27. | 06/19/2023 | 2:47 PM | 915-277-3951 | Martin calling with an intentionally spoofed number |

| | | | | |
|---|---|---|---|---|
| **28.** | 06/20/2023 | 2:11 PM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| **29.** | 06/21/2023 | 8:10 AM | 915-280-2378 | Martin calling with an intentionally spoofed number |
| **30.** | 06/21/2023 | 2:43 PM | 915-277-3951 | Martin calling with an intentionally spoofed number |
| **31.** | 06/22/2023 | 8:34 AM | 915-277-3951 | Told Martin to never call again |
| **32.** | 06/22/2023 | 8:35 AM | 631-561-5163 | Called right back after DNC |
| **33.** | 06/22/2023 | 9:22 AM | 631-561-5163 | Intentional DNC violation |
| **34.** | 06/22/2023 | 9:53 AM | 631-561-5163 | Intentional DNC violation |
| **35.** | 06/23/2023 | 7:19 AM | 631-561-5163 | Intentional DNC violation |
| **36.** | 06/28/2023 | 7:11 AM | 915-383-8662 | Martin again called before 8 AM. |

38. On October 21, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not find a valid telephone solicitation on file for Defendant Lexington.

39. On June 29, 2023, Plaintiff emailed Defendant Lexington about the unwanted phone calls, repeated phone calls before 8 AM, and Defendant Lexington's failure to register to telephone solicit to Texas residents.   Exhibit A.

40. Defendant Lexington has continued to solicit Texas residents with full knowledge it is violating Texas law.

41. Plaintiff did not have a preexisting relationship with Defendants, had never been a customer of Defendants, and had never applied for a loan or any other accounts with Defendants.

42. Plaintiff's phone number had no reason to be in any database controlled by Defendants as Defendants had no previous relationship with Plaintiff.

43. Plaintiff infers an ATDS was used because:

a. Martin informed Plaintiff that an auto-dialing machine is used to spoof caller ID's and trick consumers into answering the phone.

b. Plaintiff was never a customer of Defendant Lexington and Defendant Lexington did not have a legitimate reason to have Plaintiff's phone number on any list, or database, from which Plaintiff's phone number would have been sent phone calls.

c. Plaintiff had delivered multiple Do Not Call ("DNC") requests to Defendants and Defendants would have removed Plaintiff's number from any dialing databases.

d. Had Defendant Lexington obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry and Plaintiff's number would have been removed.

44. Defendant Lexington placed multiple phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

45. Defendant Lexington knew or should have known that its conduct would violate the TCPA and its regulations because Plaintiff has been on the National Do Not Call Registry since December 2007. Plaintiff's Cell Phone is a Residential Phone and Plaintiff made numerous DNC requests to Defendants.

46. No emergency necessitated none of the alleged illegal automated text messages.

47. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing phone calls consumed part of this capacity.

**VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101**

48. Defendant Lexington initiated the phone calls alleged herein and is a "seller" under the

Texas Business and Commerce Code because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

49.     Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."

50.     The actions of Defendant Lexington violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

51.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

52.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

53.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

54.     Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101

## DEFENDANTS MR. DIANTONIO, MS. DIANTONIO, AND LEWANDO ARE PERSONALLY LIABLE

55.     Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando personally participated in the

texts at issue because Defendants Mr. DiAntonio, Ms. DiAntonio and Lewando personally directed the text messages to be sent to Texas residents with Texas area codes.

56.     Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando are the principal officers of Defendant Lexington.

57.     Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando closely hold Defendant Lexington and are intimately involved in all decision-making and legal activities of Defendant Lexington.

58.     Mr. DiAntonio, Ms. DiAntonio, and Lewando made the decision to purchase auto dialing spoofing technology, trained their employees on the use of such technology, and directed their employees use the technology with the intention of breaking state and federal laws.

59.     Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando have direct and personal involvement in and ultimate control over every aspect of Defendant Lexingtons's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

60.     Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

61.     There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as

> where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

> Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

62. The Same Court held that corporate officers were also personally liable for DTPA

violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for

13

the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

63. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando are the managers and owners of Defendant Lexington and control the day-to-day operations of Lexington and directed their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

64. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando are not merely bystanders. They are the masterminds that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

65. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando are well aware their conduct violated the TCPA and refused to alter their behavior. Defendants Mr. DiAntonio, Ms. DiAntonio, and Lewando are the sole directors and officers of Defendant Lexington and the only persons with the power to make unlawful, fraudulent, and unethical behavior stop.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE PHONE CALLS

66. Defendants' phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

67. Defendants' phone calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

68. Defendants' phone calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

69. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

70. The calls to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## COUNT ONE:
## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

71. Plaintiff incorporates the preceding paragraphs 1-70 as if fully set forth herein.

72. Defendant Lexington, and/or their agents placed thirty-six (36) auto-dialed phone calls to Plaintiff's cellular telephone.

73. Plaintiff never consented to receive auto-dialed from Defendants. Plaintiff had no relationship with Defendants.

74. Defendant Lexington's auto-dialed phone calls were made for the purposes of advertising and marketing their goods and services. These auto-dialed constituted commercial advertising and telemarketing as contemplated by the TCPA.

75. The phone calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

76. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling

Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful dialing campaigns.

77. Not only did Defendants make these violating phone calls, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

78. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

79. Plaintiff incorporates the preceding paragraphs 1-70 as if fully set forth herein.

80. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

81. Defendants sent thirty-six (36) solicitation phone calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the phone calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

82. Plaintiff was statutorily damaged at least thirty-six (36) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the automated phone calls described above, in the amount of $500 per phone call.

83. Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

84. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE

### (Violations of Texas Business and Commerce Code 302.101)

### Failure to obtain a Telephone Solicitation Registration Certificate

### (Against All Defendants)

85. Plaintiff incorporates the preceding paragraphs 1-70 as if fully set forth herein.

86. Defendant and/or their affiliates or agents made at least thirty-six (36) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

87. As a result of Defendants' and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

88. As a result of Defendant's and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code 302.302(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violated the TCPA and Texas state law;

C.  An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $1500 per automated auto-mated phone call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for thirty-six (36) automated phone calls.

E.  An award of $1500 per phone call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for thirty-six (36) phone calls.

An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for thirty-six (36) calls

F.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.  An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

H.  Such further relief as the Court deems necessary, just, and proper.

October 24, 2023,                                                          Respectfully submitted,

                                                                           /s/ Brandon Callier

_____
Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trail by jury on all claims so triable.

October 24, 2023,                                     Respectfully submitted,


/s/ Brandon Callier

_____
Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604
Callier74@gmail.com